42267. TURNER et al. v. ROSS.

ARGUED SEPTEMBER 9, 1966—DECIDED MARCH 29, 1967—

*Hatcher, Meyerson, Oxford & Irvin, Henry M. Hatcher, Jr.,* for appellants.

*Tom Dillon,* for appellee.

FRANKUM, Judge. This was a suit brought by the owner of a servient city lot against the owner of an adjacent dominant city lot and against a contractor making improvements on that lot and against a realty company, alleged to have been an owner of such lot, for damages alleged to have resulted to the plaintiff's property from the acts of the defendants in grading and changing the natural flow of water from said lot so as to

increase the amount of water flowing therefrom and to cause the flooding and silting of the plaintiff's lot and the flooding of the basement of the plaintiff's dwelling, causing the settling of its foundations and damage to the structure on account thereof. Properly construed, the petition sought to recover damages from the defendants as for the maintenance of an abatable nuisance. While it was alleged generally that the "negligent and . . . unlawful acts" of the defendants caused the damage sued for, the plaintiff did not allege any specific acts as constituting negligence. The case will, therefore, be treated as one based not on negligence but as one arising from the maintenance of a private nuisance under *Code* § 72-104. *City of Macon v. Roy,* 34 Ga. App. 603, 606 (130 SE 700). By amendment, plaintiff alleged that the value of his property had been reduced from a reasonable market value of $22,000 immediately before the damage to a reasonable market value of only $16,000 immediately after the damage. Upon the trial of the case the jury returned a verdict for the plaintiff in the amount of $2,500. Judgment was entered thereon, and the defendants appealed to this court after the overruling of their motion for a new trial.

■ Appellants contend that the case was tried on an erroneous theory as to the measure of damages, that is, that the true measure of damages, where the injury is shown to have been not to the land itself but to the improvements thereon (to the buildings, as a part of the real estate, *Code* § 85-201), is the cost of restoring the improvements to their original condition, or the replacement cost or value and not the diminution in market value. Irrespective of whether or not the appellants' contention is correct in this regard, a careful examination of the record revealed that counsel for the appellee (the plaintiff), during the course of a colloquy between the court and counsel on the trial of the case, stated: "In this court we can't get future and permanent damages without refiling suit." This statement, properly construed, constituted an election in open court by counsel for the plaintiff (*McWhorter v. O'Neal,* 123 Ga. 247, 250 (2) (51 SE 288); *Finney v. Blalock,* 208 Ga. 218 (3) (65 SE2d 920)), to proceed solely to recover damages which had accrued up to the time of the filing of the petition and con-

stituted an abandonment of any claim of permanent diminution in the value of the plaintiff's property. Having made this election, plaintiff could not recover on the theory of diminution in value. *City of Macon v. Roy*, 34 Ga. App. 603, 608, supra; *Lancaster v. Monroe*, 45 Ga. App. 496, 498 (165 SE 302). It follows that the trial court erred in thereafter submitting to the jury in its charge diminution in value as the measure of damages in this case.

■ If the statement of counsel for the plaintiff above referred to be disregarded, the case otherwise appears to have been tried almost entirely on the theory that diminution in market value was the proper measure of damages. However, the only testimony as to the amount by which the plaintiff's property had been diminished in value, except the testimony of a witness for the defendant who fixed plaintiff's damages at not more than $35, was the testimony of the plaintiff himself. This is true, because the plaintiff's witness, Mr. Moore, who testified as to the amount of damages and the cost of repairs to plaintiff's house and who described the damages to plaintiff's house which he found upon his inspection, stated that he would not make the repairs himself for less than $1,200 or $1,500. No testimony by him in any way showed how he arrived at this figure, but assuming, for the sake of argument, that it would have authorized a verdict for repair costs, had the case been tried on that theory, it certainly would not have authorized a verdict for more than $1,500.

Ross, the plaintiff, was asked, "Did the water damage any shrubbery?" He answered, "No, the water didn't damage any shrubbery." He further testified: "I figure as much mud and water and all the damage running under my house and everything and killing the grass, everything, I figured it cut my value at least $6,000." This testimony was objected to, and the only ruling made by the court appears to be, "All right." Ross further testified: "Well, I would consider my house market value before this happened as would be $24,000, and I figure that on repairing inside, from what I—it would cost me somewhere around $1,200 to fix, and I figure from all the damage inside and everything, that it would cut it down, would bring it down

$6,000, and *on continuing damage, it's not just the damage it did at that time,* it's still damage." (Emphasis supplied). There was an objection to this testimony, and the court in reply to this objection said, "All right, go ahead and itemize what you claim, how you were damaged, that's what you have got to do." Whereupon the witness answered: "I figure I was damaged $1,200. It would take $1,200 to repair the inside." Further along he testified on direct examination: "Q. We would like to ask you what you feel your property—what you assess the market value of your property after this damage? A. At the present time? Q. No, at the time in March, what you assess the market value of your property at in March of '63. A. Well, I figure around $16,000 after. In other words, my property was worth somewhere from, I would say $24,000. It damaged me, I'm sure,—Q. Would you have paid—as a home buyer, would you have paid $16,000 for that piece of property? —A. My opinion, it was worth, in other words, before, $24,000, because the houses that they sold, I am basing on other property, and what I had in this property, what I actually had in it, and after, I would be lucky—I'll put it like that—if I could get twelve, somewhere around twelve or fifteen thousand dollars." And on cross examination this witness testified: "Q. Now you say your house before this was worth $24,000? A. I would say it was, yes. Q. When did you buy it? A. I bought it in '59. Q. And how much did you pay for it? A. Well, I would say everything run me around $22,000. Q. What did you pay for the house when you got a deed to the property out there? A. Well, in all, in everything, I figure everything cost me somewhere around $22,000, the best—I can go back and figure up all of it."

This was substantially all of the evidence on behalf of the plaintiff relating to the amount of his damages. As can be seen from a mere casual reading of it, it was vague, uncertain and self-contradictory. Such testimony, coming from the lips of the plaintiff in a case which was at best a weak and doubtful one on the issue of liability and the amount of damages, and being, insofar as it related to the issue of damages, utterly inconsistent with itself and self-contradictory as to the amount

by which the plaintiff had been damaged, must be construed in the light most unfavorable to the plaintiff. Who, but the plaintiff, was peculiarly in a position to state firmly and definitely not only the amount of his damages but the facts upon which he based his conclusion as to the amount? He was under a duty to the court and to the opposing party to give a candid and intelligible statement of what he contended authorized him to recover. *Western &c. R. Co. v. Evans,* 96 Ga. 481, 486 (23 SE 494); *Freyermuth v. Southbound R. Co.,* 107 Ga. 31 (2) (32 SE 668); *Ray v. Green,* 113 Ga. 920 (2) (39 SE 470); *Farmer v. Davenport,* 118 Ga. 289 (45 SE 244). Instead of giving a consistent and logical statement of what he contended his damages were, however, plaintiff testified that he had been damaged at least $6,000; that the value of his property had been reduced from $24,000 to $16,000 (which is not $6,000, but an $8,000 diminution in value), and then testified at several other times that he had been damaged to the extent of $1,200. Applying the rules of construction set forth in the cases just cited, that in construing the plaintiff's own testimony most strongly against him, the jury was not authorized to return a verdict for him based on his own testimony in a sum greater than $1,200, it follows that the verdict for the plaintiff in the amount of $2,500 was unauthorized.

■ The only testimony as to the relation of Dot Realty Company to the property adjoining plaintiff's property showed merely that it had owned the property at one time, but that it had sold the property to the defendant Turner prior to the commencement of the grading which the plaintiff contended caused the damage. This being so, a verdict against Dot Realty Company in any amount was unauthorized.

*Judgment reversed. Felton, C. J., and Pannell, J., concur.*